

**UNITED STATES DISTRICT COURT**
**SOUTHERN  DISTRICT OF NEW YORK**
------------------------------------------------------------X

SYNERGY ADVANCED                              :
PHARMACEUTICALS, INC.,                        :
                                              :
               **Plaintiff,**        :
                                              :         **OPINION & ORDER**
      **- against -**                    :
                                              :         **10 Civ. 1736 (SAS)**
CAPEBIO, LLC, COMBIMAB, INC., and             :
PER LINDELL,                                  :
                                              :
           **Defendants.**         :
------------------------------------------------------------ X

**SHIRA A. SCHEINDLIN, U.S.D.J.:**

## I.    INTRODUCTION

Synergy Advanced Pharmaceuticals, Inc. ("Synergy Advanced")

brings this action against CapeBio, LLC ("CapeBio"), CombiMab, Inc.

("CombiMab") and Per Lindell, seeking monetary and injunctive relief for

defendants' breach of various contractual provisions.  Synergy Advanced, which

also asserts related claims for breach of fiduciary duty and unfair competition, has

filed a motion for a preliminary injunction enforcing those provisions.  For reasons

to be discussed, that motion is denied.

## II.   BACKGROUND

### A.    The Parties

Synergy Advanced is a small, publicly traded drug development

company located in New York.[1]  According to its President and Chief Executive

Officer, Gary S. Jacob, its primary business is the development of certain

urgoguanylin or ST-peptide derivatives, including a compound called SP-304 or

Guanilib, that are used to treat gastrointestinal disorders.[2]  CapeBio is a

consultancy company that provides services for companies developing various

pharmaceuticals.[3]  Lindell is its President and only shareholder.[4]  Lindell is also the

only shareholder of CombiMab[5] – which, like Synergy Advanced, develops drugs

for the treatment of gastrointestinal disorders.

## B.     Agreement Between Synergy Advanced and CapeBio

On September 25, 2007, Lindell (on behalf of CapeBio) and Bernard

Denoyer (on behalf of Synergy Advanced) executed a services agreement

("Agreement") under which CapeBio agreed to perform consulting services related

to the research and development of gastrointestinal pharmaceutical products in

---

[1]     *See* Declaration of Gary S. Jacob ("Jacob Decl."), President and Chief Executive Officer of Synergy Advanced ¶¶ 3-4.

[2]     *See id* ¶ 4; 10/27/09 Affidavit of Per Lindell Regarding His Compliance with the Services Agreement Between Synergy Advanced and CapeBio ("Lindell Aff."), Ex. F to Jacob Decl., ¶ 4.

[3]     *See* Lindell Aff. ¶ 3.

[4]     *See id.* ¶ 6; 9/25/10 Deposition of Per Lindell ("Lindell Dep."), Ex. A to Synergy Advanced's Memorandum of Law in Reply, at 73:10-73:16.

[5]     *See* Lindell Dep. at 73:2-73:9.

exchange for specified monetary compensation.[6]  Performance of the Agreement

commenced on October 1, 2007[7] and was terminated on July 1, 2008.[8]  The

Agreement expressly provides that several of its provision – including a

confidentiality provision, a covenant not to compete, and a provision regarding the

assignment of inventions – "shall remain in effect notwithstanding the termination

of [the] Agreement for any reason."[9]

### 1.    Confidentiality Provision

The Agreement prohibits CapeBio from disclosing any confidential

---

[6]       *See* Services Agreement ("Agreement"), Ex. B. to Jacob Decl. Defendants argue that Lindell is not subject to the Agreement between Synergy Advanced and CapeBio, and hence, is not bound by its non-disclosure provisions. *See* Defendants' Memorandum of Law in Opposition to Plaintiff's Motion for Preliminary Injunction ("Def. Opp.") at 16.  However, under New York law, an agent who signs a contract on behalf of a principal is bound by its terms where there is "clear and explicit evidence of the agent's intention to substitute or superadd his personal liability for, or to, that of his principal." *Lerner v. Amalgamated Clothing and Textile Workers Union*, 938 F.2d 2, 5 (2d Cir. 1991). Lindell was CapeBio's sole shareholder and only employee, and has affirmed in a sworn affidavit that he both caused CapeBio to enter into the Agreement and "agreed to be bound by its terms." Lindell Aff. ¶ 6.  These facts suggest that it is highly likely that Synergy Advanced will succeed in showing that Lindell is subject to the Agreement.

[7]       *See* Agreement ¶ 3.

[8]       *See* 7/1/08 Letter from Bernard Denoyer to Per Lindell, Ex. D to Jacob Decl.; Lindell Aff. ¶ 9.

[9]       Agreement ¶ 6(e).

information it obtained while providing services for Synergy Advanced and from using such confidential information for its benefit.[10]  The Agreement defines confidential information to include:

> (i) any information which is proprietary or unique to [Synergy Advanced] or its affiliates (or their businesses), whether or not identified as being confidential, including, but not limited to, trade secret information, matters of a technical nature such as processes, systems, research techniques, computer programs, know-how, improvements, discoveries, designs, inventions, devices, techniques, data and formulas, research subjects and results; (ii) information of a strategic nature, including, but not limited to, any information with respect to marketing methods, plans and strategies, investigation of research studies, forecasts, products, operations, revenues, unpublished financial statements, expenses, budgets, projections, profits, sales, key personnel, customers (including customer lists and customer contacts), suppliers, costs and pricing policies; (iii) information as to employees and consultants, including, but not limited to , capabilities, competence, status with [Synergy Advanced] and compensation levels; and (iv) any information, whether communicated to [CapeBio] in written, electronic or oral form, whether [Synergy Advanced] or an affiliate has indicated the confidential nature of such information to [CapeBio].[11]

It excludes from the definition of confidential information any information:

> (x) that is otherwise public knowledge or known within the applicable industry, (y) that has become available to [Synergy Advanced] on a non-confidential basis from a source which is not prohibited from disclosing such information to [CapeBio] by a legal, contractual or fiduciary obligation to [Synergy Advanced],

---

[10]   *See id.* ¶ 10(b).

[11]   *Id.*

-4-

or (z) compelled to be disclosed pursuant to the order of a court or other governmental or legal body having jurisdiction over such matter.[12]

Pursuant to the Agreement, "a breach or potential breach" of the confidentiality provision will cause "irreparable injury and that money damages may not be an adequate remedy."[13]   Accordingly, the Agreement provides that "[Synergy Advanced] and its affiliates shall be entitled to injunctive relief to have the provision[] . . . enforced."[14]

### 2.   Covenant Not to Compete

The covenant not to compete prevents CapeBio from performing any services relating to the treatment of gastrointestinal diseases for two competing companies – Microbia, Inc. and Forest Laboratories, Inc.   Specifically, it states that

> neither [CapeBio] not any direct or indirect principal or employee of [CapeBio] will directly or indirectly work for or with, own, invest in, render any service or advice to or act as officer, director, employee, or independent contractor, for Microbia, Inc. or any division, subsidiary or joint venture of Forest Laboratories, Inc. that is exclusively engaged in the research, development, marketing or sale of drugs for the treatment of or mitigation of symptoms related to gastrointestinal diseases.[15]

---

[12]   *Id.*

[13]   *Id.* ¶ 10(f).

[14]   *Id.*

[15]   *Id.* ¶ 10(e).

The covenant remains in effect during the term of the Agreement and for a period of one year thereafter.[16] It applies anywhere in the United States.[17] As with the confidentiality provision, the Agreement states that a breach of the covenant not to compete will cause irreparable injury to Synergy Advanced and that Synergy Advanced shall therefore be entitled to injunctive relief enforcing this provision.[18]

### 3.     Assignment of Inventions

Finally, the Agreement states that "all ideas, methods inventions, discoveries, improvements, work products or developments," produced by CapeBio and pertaining to Synergy Advanced's business "belong exclusively to [Synergy Advanced]."[19] Accordingly, CapeBio is required to assign all "such inventions and all such patents that may issue thereon" to Synergy Advanced.[20] These provisions apply to all inventions produced within one year of termination or expiration of the Agreement.[21]

### C.     The August 25, 2009 Action

---

[16]    *See id.*

[17]    *See id.*

[18]    *See id.* ¶ 10(f).

[19]    *Id.* ¶ 11(a).

[20]    *Id.* ¶ 11(b).

[21]    *See id.* ¶11(a).

On August 25, 2009, Synergy Advanced filed a Complaint in New York State Supreme Court against CapeBio and Lindell.[22]  The complaint alleged that Lindell had, *inter alia*, breached the Agreement's confidentiality provision by using confidential information to develop a molecule for treating gastrointestinal disease[23] and violated the covenant not to compete.[24]  Pursuant to these allegations, Synergy Advanced sought both injunctive and monetary relief.[25]

Upon obtaining an affidavit from Lindell asserting that he had not violated the Agreement, Synergy Advanced filed a Notice of Discontinuance without prejudice in that action.[26]  The affidavit affirms, in relevant part, that Lindell was "President of CapeBio and its main shareholder," "caused CapeBio to enter into the Agreement," and "agreed to be bound by its terms."[27]  The affidavit also states that "CapeBio was privy to Synergy's confidential information" during

---

[22]    *See* 8/25/09 Synergy Advanced Complaint Against CapeBio and Per Lindell, Ex. E to Jacob Decl.

[23]    *See id.* ¶ 25

[24]    *See id.* ¶ 28.

[25]    *See id.* ¶¶ 31-55.

[26]    *See* Jacob Decl. ¶ 17.

[27]    Lindell Aff. ¶ 6.

the term of the Agreement,[28] that CapeBio had not "engaged in a research and development program to develop and commercialize the compounds that [Lindell] worked on, or learned of, while performing services for Synergy [Advanced],"[29] and that Lindell did not "inten[d] to engage in a research and development program to develop and commercialize the compounds that [he] worked on, or learned of, while performing services for Synergy."[30]

### D.    The Current Action

A few months after discontinuing the prior action, Synergy Advanced again filed a complaint in state court on December 22, 2009.  That complaint – which is the subject of this action – repeats Synergy Advanced's allegations from the prior action[31] and further asserts that Lindell has formed a new entity, CombiMab, to conceal Lindell's ongoing violations of the Agreement.[32] Specifically, Synergy Advanced alleges that Lindell, through CapeBio and CombiMab, has breached the Agreement by, *inter alia*, attempting to assemble a

---

[28]    *Id.* ¶ 8.

[29]    *Id.* ¶ 11.

[30]    *Id.*

[31]    *See generally* Complaint ("Compl.").

[32]    *See id.* ¶ 42.

team of consultants that have contracts with Synergy Advanced,[33] making

presentations to various venture capital firms regarding the development of

uroguanylin analogs and analogs of ST Peptides,[34] and misappropriating Synergy

Advanced's confidential information for its own benefit.[35]  Synergy Advanced also

asserts that Lindell has committed perjury by executing the affidavit that caused

Synergy Advanced to discontinue its prior action without prejudice.[36]  Defendants

removed the action to federal court on the basis of diversity jurisdiction.[37]

        After removal, Synergy Advanced moved for entry of a preliminary

injunction against defendants.  Specifically, Synergy Advanced has requested an

order:

> (a)     . . . [E]njoining the defendants from disclosing or making
>         use of any confidential information that the defendants
>         obtained, directly or indirectly, while providing services to
>         the plaintiff, including any information obtained from any
>         consultants retained by the plaintiff;
>
> (b)     Enjoining the defendant and officers of [CapeBio or
>         CombiMab], or their agents, servants, employees and/or
>         attorneys or any other person or entity who is in active

---

[33]    *See id.* ¶ 43.

[34]    *See id.* ¶ 44.

[35]    *See id.* ¶¶ 48-49

[36]    *See id.* ¶ 51.

[37]    *See* 3/4/10 Notice of Removal.

concert or actively participating with the defendants, from
in any way competing with the plaintiff in the research,
development, marketing or sale of drugs for the treatment
or mitigation of symptoms related to gastrointestinal
diseases, as provided for in provision 10E of the
[Agreement];

(c)     Directing the defendants to affirmatively turn over to the
plaintiff any inventions, patents, methods, observations,
improvements, patent applications or other intellectual
property which have been reduced to written form and
which were at least partially created during the period of
consultancy or one year thereafter, to wit, July 1, 2009, as
provided for in [the Agreement];

(d)     Directing defendant Lindell to advise the plaintiff of all
persons/entities whom he has contacted and provided
confidential information that he made use of in violation of
the confidentiality and non-compete agreements . . . , and
affirmatively directing defendants to contact those
persons/entities and direct them to turn over to the plaintiff
all such confidential information they obtained from or
through the defendants or persons or entities acting in
concert with the defendants; and

(e)     Awarding such other and further relief as to this Court may
seem just and proper.[38]

## III.   APPLICABLE LAW

"'The district court has wide discretion in determining whether to

---

[38]     Memorandum of Law in Support of Plaintiff's Motion for a
Preliminary Injunction ("Pl. Mem.") at 9-10.

grant a preliminary injunction . . . ."[39] Nonetheless, "'[a] preliminary injunction is

an extraordinary and drastic remedy, one that should not be granted unless the

movant, by a *clear showing*, carries the burden of persuasion.'"[40] "'A party

seeking a preliminary injunction in this circuit must show: (1) irreparable harm in

the absence of the injunction and (2) either (a) a likelihood of success on the merits

or (b) sufficiently serious questions going to the merits to make them a fair ground

for litigation and a balance of hardships tipping decidedly in the movant's

favor.'"[41] "A preliminary injunction is an extraordinary remedy never awarded as

of right."[42] "The purpose of a preliminary injunction is to preserve the *status quo*

between parties pending a final determination of the merits."[43]

　　　　"'To satisfy the irreparable harm requirement, [petitioner] must

---

[39]　　*Grand River Enter. Six Nations, Ltd. v. Pryor*, 481 F.3d 60, 66 (2d Cir. 2007) (quoting *Moore v. Consolidated Edison*, 409 F.3d 506, 511 (2d Cir. 2005)). *Accord Somoza v. New York City Dep't of Educ.*, 538 F.3d 106, 112 (2d Cir. 2008) (noting that a district court decision concerning a preliminary injunction is reviewed for abuse of discretion).

[40]　　*Sussman v. Crawford*, 488 F.3d 136, 139-40 (2d Cir. 2007) (quoting *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997)).

[41]　　*County of Nassau, N.Y. v. Leavitt*, 524 F.3d 408, 414 (2d Cir. 2008) (quoting *NXIVM Corp. v. Ross Inst.*, 364 F.3d 471, 476 (2d Cir. 2004)).

[42]　　*Winter v. Natural Res. Def. Council, Inc.*, 129 S.Ct. 365, 376 (2008) (citation omitted).

[43]　　*Alliance Bond Fund, Inc. v. Grupo Mexicano de Desarrollo, S.A.*, 143 F.3d 688, 692 (2d Cir. 1998).

-11-

demonstrate that absent a preliminary injunction [it] will suffer an injury that is neither remote nor speculative, but actual and imminent, and one that cannot be remedied if a court waits until the end of trial to resolve the harm.'"[44]  Moreover, irreparable harm by definition "'cannot be remedied by an award of monetary damages.'"[45]  In determining whether a plaintiff has demonstrated a likelihood of success on the merits of the "ultimate case, a court is not called upon finally to decide the merits of the controversy.  It is necessary only that the court find that the plaintiff has presented a strong prima facie case to justify the discretionary issuance of preliminary relief."[46]

## IV.   DISCUSSION

Synergy Advanced has requested several different injunctive orders. Because Synergy Advanced has failed to show that any of the requested injunctive relief is necessary to prevent irreparable harm, Synergy Advanced's motion is

---

[44]      *Grand River*, 481 F.3d at 66 (quoting *Freedom Holdings, Inc. v. Spitzer*, 408 F.3d 112, 114 (2d Cir. 2005)).

[45]      *Hoblock v. Albany County Bd. of Elections*, 422 F.3d 77, 97 (2d Cir. 2005) (quoting *Shapiro v. Cadman Towers, Inc.*, 51 F.3d 328, 332 (2d Cir. 1995)). *Accord Jayaraj v. Scappini*, 66 F.3d 36, 39 (2d Cir. 1995) ("[W]here monetary damages may provide adequate compensation, a preliminary injunction should not issue.").

[46]      *Gibson v. U.S. Immigration & Naturalization Serv.*, 541 F. Supp. 131, 137 (S.D.N.Y. 1982) (citation omitted).

-12-

denied.

## A.      Disclosure or Misappropriation of Confidential Information

Synergy Advanced has requested a preliminary injunction prohibiting

defendants from "disclosing or making use of any confidential information that the

defendants obtained, directly or indirectly, while providing services to the

plaintiff."[47] Regardless of whether Synergy Advanced is likely to show that

defendants have violated the Agreement's confidentiality provisions[48] – which

prohibit CapeBio and Lindell from both using Synergy Advanced's confidential

information and from disclosing it to others – it has failed to demonstrate that it

will suffer irreparable harm in the absence of a preliminary injunction enforcing

those provisions.

*First*, there is no indication that defendants' *use*, as opposed to

*disclosure*, of Synergy Advanced's allegedly confidential information threatens to

cause irreparable harm.  A defendant's entry into a competitive market can cause

---

[47]      Pl. Mem. at 9.

[48]      In fact, Synergy Advanced has proffered little evidence to support its
assertion that defendants have violated the Agreement.  Instead, apparently
thinking that the matter is settled before any litigation on the merits has even
begun, Synergy Advanced has simply made the wholly conclusory statements that
"[i]t is clear that defendants have violated their agreement" and that "[i]f ever there
was a case where plaintiff has shown a likelihood of success on the merits, this is
that case." Pl. Mem. at 7-8.

irreparable harm to a plaintiff in certain circumstances – *e.g.*, if the defendant's

entry is likely to cause the plaintiff to lose "current or future market share" or be

driven out of business.[49]  In this case, though, defendants have not yet begun to sell

any products for the treatment of gastrointestinal disease and there is no suggestion

that they are poised to do so in the near future.[50]  If defendants are using Synergy

Advanced's confidential information, it is apparently only to continue developing a

drug that is not ready to go to market.  This alleged use of the confidential

information does not presently threaten to cause any injury to Synergy Advanced

that cannot be compensated through the payment of monetary damages.[51]

   *Second*, there is no established threat that defendants will *disclose*

confidential information covered by the Agreement or that such disclosure would

cause irreparable harm.  Synergy Advanced asserts that it "faces a danger of trade

---

[49] *Grand River*, 481 F.3d at 67.  *Accord Novartis Consumer Health, Inc. v. Johnson & Johnson-Merck Consumer Pharms. Co.*, 290 F.3d 578, 596 (3d Cir. 2002) ("In a competitive industry where consumers are brand-loyal, . . . [the] loss of market share is a potential harm which cannot be redressed by a legal or an equitable remedy following a trial." (quotation marks and citation omitted)).

[50] Defendants assert that neither party presently sells any product.  *See* Def. Opp. at 24.  Synergy Advanced has not denied this assertion and there is no indication in the record to the contrary.  Accordingly, for purposes of this preliminary injunction, I have assumed that at least defendants have not begun to sell products for the treatment of gastrointestinal diseases.

[51] *See Hoblock*, 422 F.3d at 97.

-14-

secret misappropriation" and that, under Second Circuit law, trade secret

misappropriation is presumed to cause "irreparable harm."[52]  As an initial matter,

Synergy Advanced has not attempted to show that defendants are in possession of

"trade secrets" – a term of art which does *not* cover all confidential information –[53]

and has not made any other argument why the dissemination of information

possessed by defendants would cause irreparable harm.

In addition, even accepting that the misappropriation of confidential

information protected by a non-disclosure agreement is analogous to the

misappropriation of trade secrets, the misappropriation of information alone is

insufficient to create a presumption of irreparable harm.[54]  To demonstrate

[52]     Pl. Mem. at 6

[53]     *See North Atl. Instruments, Inc. v. Haber*, 188 F.3d 38, 44 (2d Cir.
1999) ( "A trade secret is any formula, pattern, device or compilation of
information which is used in one's business, and which gives the owner an
opportunity to obtain an advantage over competitors who do not know or use it.").

[54]     *See Faively Trans. Malmo AB v. Wabtec Corp.*, 559 F.3d 110, 118-19
(2d Cir. 2009) ("A rebuttable presumption of irreparable harm might be warranted
in cases where there is a danger that, unless enjoined, a misappropriator of trade
secrets will disseminate those secrets to a wider audience or otherwise irreparably
impair the value of those secrets.  Where a misappropriator seeks only to use those
secrets – without further dissemination or irreparable impairment of value – in
pursuit of profit, no such presumption is warranted because an award of damages
will often provide a complete remedy for such an injury."). *Cf. Salinger v. Colting*,
__ F.3d __, No. 09 Civ. 2878, 2010 WL 1729126, at *9 (2d Cir. Apr. 30, 2010)
(holding that the Second Circuit's prior rulings indicating that irreparable harm
may be presumed when plaintiffs show a likelihood of success on the merits in

-15-

irreparable harm, a plaintiff must show an imminent danger that a defendant is

likely to disseminate the protected information – an eventuality that should not be

presumed given that the "misappropriator will often have the same incentive as the

originator to maintain the confidentiality of the secret in order to profit from the

proprietary knowledge."[55]  Synergy Advanced has failed to demonstrate such a

danger.  The sole piece of evidence that Synergy Advanced has provided in support

of its claim of irreparable harm is a CombiMab PowerPoint presentation allegedly

used to raise venture capital.[56]  While the existence of this presentation confirms

that CombiMab is developing a drug that is at least similar to that developed by

Synergy Advanced, plaintiff has made no showing that the information contained

in the PowerPoint presentation is considered confidential under the terms of the

Agreement.[57]

------

copyright cases are inconsistent with the Supreme Court's decision in *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388 (2006)).

[55]    *Id.*

[56]    *See* CombiMab PowerPoint Presentation, Ex. G to Jacob Decl.

[57]    Synergy Advanced, for example, claims that the presentation outlines a "clinical plan that is substantially identical to Synergy[] [Advanced's] clinical plan for SP-304 and is Synergy[] [Advanced's] confidential information."  Jacob Decl. ¶ 24.  However, Synergy Advanced itself has also described its clinical plans in publicly available documents. *See* Synergy Advanced Corporate Presentation Entitled "Developing New Treatments for GI Disorders and Diseases", Ex. 1 to Declaration of Asha Jones, paralegal with Christopher & Weisberg, P.A., counsel

A preliminary injunction is a drastic remedy that should only be

granted when a plaintiff "will [otherwise] suffer an injury that is neither remote nor

speculative, but actual and imminent."[58]  Synergy Advanced has not shown there is

a danger of such an injury.

## B.   Injunction Enforcing Covenant Not to Compete

Synergy Advanced has requested an order enjoining defendants "from

in any way competing with the plaintiff in the research, development, marketing or

sale of drugs for the treatment or mitigation of symptoms related to gastrointestinal

---

for defendants, at 15-18. Because the Agreement excludes information "that is
otherwise public knowledge or known within the applicable industry" from
protection, Agreement ¶ 10(b), I cannot find on the basis of the information
presently before this Court that the disclosure of such information is likely violate
the Agreement.

[58]      *Grand River*, 481 F.3d at 66 (quoting *Freedom Holdings*, 408 F.3d at
114). In its reply brief, Synergy Advanced raises the argument that it will suffer
irreparable harm in the absence of an injunction because defendants will be unable
to satisfy a monetary judgment against them. Synergy Advanced's only support for
this assertion is its claim that one of the three defendants – presumably CombiMab,
although Synergy Advanced fails to specify – has "no assets" and has "raised only
$75,000." Reply Memorandum of Law in Support of Plaintiff's Motion for a
Preliminary Injunction at 7. However, Synergy Advanced does not provide any
facts supporting the amount of damages to which it believes it is entitled, or assert
any reason why CapeBio and Lindell, as opposed to CombiMab, would be unable
to satisfy such a judgment. Accordingly, Synergy Advanced's assertion that
defendants would not be able to satisfy an anticipated judgment is unavailing.

diseases, as provided for in [the Agreement's covenant not to compete]."[59]

Although Synergy Advanced may be correct that Lindell has violated the

Agreement's covenant not to compete in the past, the covenant's one-year time

limit has already lapsed. Accordingly, a preliminary injunction enforcing that

covenant beyond its period of limitation is inappropriate.[60]

### C.    Assignment of Inventions

Synergy Advanced requests an injunction "[d]irecting the defendants

to affirmatively turn over to the plaintiff any inventions, patents, methods,

observations, improvements, patent applications or other intellectual property

which have been reduced to written form and which were at least partially created

---

[59]    Pl. Mem. at 9.

[60]    Synergy Advanced cites *Ticor Title Ins. Co. v. Cohen*, 173 F.3d 63
(2d Cir. 2009), for the proposition that "the law in the Second Circuit is clear that
[a party which agrees to a contractual provision stipulating that the breach of a
covenant not to compete will cause irreparable harm] has conceded the issue of
irreparable harm." Pl. Mem. at 5. However, in *Ticor*, the contractual provision
providing for injunctive relief was only one reason among "several" that supported
the Second Circuit's finding of irreparable harm. *See Ticor Title Ins.*, 173 F.3d at
68-69. *Ticor* does not stand for the proposition that irreparable harm is presumed
where a relevant Agreement provides for the entry of injunctive relief. *See Alpha
Capital Atkiengesellschaft v. Advanced Viral Research Corp.*, No. 02 Civ. 10237,
2003 WL 328302, at *5 (S.D.N.Y. Feb. 11, 2003) (stating that although the Second
Circuit in *Ticor* gave a contractual stipulation providing that irreparable harm
would exist in the case of breach "great weight," such a provision "is not itself
dispositive").

-18-

during the period of consultancy or one year thereafter."[61] As Synergy Advanced

points out, this request for injunctive relief mirrors the assignment of inventions

provision in the Agreement.[62] Nevertheless, Synergy Advanced has made

absolutely no argument – beyond its general arguments discussed above – why a

preliminary injunction to this effect is needed to prevent irreparable harm.

Synergy Advanced seems to forget that a contract's enforceability is insufficient by

itself to warrant a preliminary injunction.[63] Without a showing that particular

injunctive relief is necessary to prevent irreparable harm, such relief cannot be

granted.[64]

## D.    Identification of Persons

Finally, Synergy Advanced seeks an injunction "[d]irecting defendant

Lindell to advise the plaintiff of all persons/entities whom he has contacted and

provided confidential information," and "directing defendants to contact those

---

[61]    Pl. Mem. at 9.

[62]    See id. at 7.

[63]    Salinger, 2010 WL 1729126, at *9 (holding that even where a plaintiff shows a likelihood of success on the merits the plaintiff must still show irreparable harm to receive a preliminary injunction).

[64]    See Patsy's Brand, Inc. v. I.O.B. Realty, Inc., 317 F.3d 209, 220 (2d Cir. 2003) ("Injunctive relief should be narrowly tailored to fit specific legal violations. Accordingly, an injunction should not impose unnecessary burdens on lawful activity." (quotation marks and citation omitted)).

-19-

persons/entities and direct them to turn over to the plaintiff all such confidential information they obtained from or through the defendants or persons or entities acting in concert with the defendants."[65] This injunction would only be appropriate if I had granted an injunction prohibiting defendants from using and distributing Synergy Advanced's confidential information.[66] Because I did not, Synergy Advanced's request is denied.

## V.    CONCLUSION

For the aforementioned reasons, Synergy Advanced's motion for a preliminary injunction is denied. The Clerk of Court is directed to close this motion (Docket No. 9). A conference is scheduled for June 14, 2010 at 4:30 p.m.

---

[65]    *See* Pl. Mem. at 9-10.

[66]    As an aside, because the requested relief would require a "positive act" (*i.e.*, the identification of parties with confidential information) beyond what is required by the Agreement, Synergy Advanced would likely have to meet the higher mandatory injunction standard to receive the requested relief. *See Tom Doherty Assocs., Inc. v. Saban Entm't, Inc.*, 60 F.3d 27, 34 (2d Cir. 1995) ("The typical preliminary injunction is prohibitory and generally seeks only to maintain the status quo pending a trial on the merits. A mandatory injunction, in contrast, is said to alter the status quo by commanding some positive act. As noted above, this distinction is important because we have held that a mandatory injunction should issue only upon a clear showing that the moving party is entitled to the relief requested, or where extreme or very serious damage will result from a denial of preliminary relief. The 'clear' or 'substantial' showing requirement . . . thus alters the traditional formula by requiring that the movant demonstrate a greater likelihood of success." (quotation marks and citations omitted)).

SO ORDERED:

_____
Shira A. Scheindlin
U.S.D.J.

Dated:      New York, New York
            May 27, 2010

## -Appearances-

**For Plaintiff:**

David Jaroslawicz, Esq.
Jaroslawicz & Jaros, LLC
225 Broadway, Suite 2410
New York, NY 10007
Phone: (212) 227-2780
Fax: (212) 227-5090

**For Defendants:**

Alan Michael Weisberg, Esq.
Jason R. Buratti, Esq.
Christopher & Weisberg, P.A.
200 East Las Olas Boulevard, Suite 2040
Fort Lauderdale, FL 33301
Phone: (954) 828-1488
Fax: (954) 828-9122