UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X

SYNERGY ADVANCED                            :
PHARMACEUTICALS, INC.,                      :
                                            :
                    Plaintiff,              :
                                            :          **OPINION AND ORDER**
        - against -                         :
                                            :          **10 Civ. 1736 (SAS)**
CAPEBIO, LLC, COMBIMAB, INC., and           :
PER LINDELL,                                :
                                            :
                    Defendants.             :
------------------------------------------------------------ X

**SHIRA A. SCHEINDLIN, U.S.D.J.:**

## I.      INTRODUCTION

        Synergy Advanced Pharmaceuticals, Inc. ("Synergy") brings this

action against CapeBio, LLC ("CapeBio"), CombiMab, Inc. ("CombiMab") and

Per Lindell (collectively, "Defendants"), seeking monetary and injunctive relief for

defendants' breach of various contractual provisions.  Synergy initially filed suit in

New York State court, after which defendants removed the action to this Court on

the basis of diversity jurisdiction.[1]  Synergy now moves to remand the action to

state court on the grounds that there is no diversity of citizenship and the case was

fraudulently removed.  Defendants oppose that motion, alleging, for the first time,

that the Court has original jurisdiction over the action because it "arises under"

-------------------------------------------------

[1]     *See* 3/4/10 Notice of Removal [Docket No. 1].

1

federal patent law.  Defendants also cross-move to drop defendants CapeBio and

CombiMab, who have stipulated to being bound by any outcome of this case, in

order to create diversity jurisdiction, as an alternative or additional ground of

federal jurisdiction.  For the reasons below, Synergy's motion is denied and

defendants' motion is granted.

## II.     BACKGROUND

### A.     The Parties

Synergy is a small drug development company, incorporated in

Delaware, with its principal place of business in New York.[2]  Its primary business

is the development of certain urgoguanylin or ST-peptide derivatives, including a

compound called SP-304 or Guanilib, which are used to treat gastrointestinal

disorders.[3]  CapeBio is a pharmaceutical consultancy company, incorporated in

Delaware, with its principal place of business in Maryland.[4]  Lindell, who is a

citizen of Maryland, is CapeBio's president and only shareholder.[5]  Lindell is also

the president and only shareholder of CombiMab, which is incorporated in

---

[2]      *See* Amended Complaint ("Compl.") ¶ 1.

[3]      *See id.* ¶ 13.

[4]      *See id.* ¶¶ 4, 23, 24.

[5]      *See id.* ¶¶ 3, 18.

Delaware, with its principal place of business in Maryland.[6]

### B.    Agreement Between Synergy and CapeBio

On September 25, 2007, Lindell (on behalf of CapeBio) and Bernard Denoyer (on behalf of Synergy) executed a services agreement ("Agreement") under which CapeBio agreed to perform consulting services related to the research and development of gastrointestinal pharmaceutical products in exchange for specified monetary compensation.[7]  Performance of the Agreement commenced on October 1, 2007[8] and was terminated on July 1, 2008.[9]  The Agreement expressly provides that several of its provisions – including a confidentiality provision, a covenant not to compete, and a provision regarding the assignment of inventions – "shall remain in effect notwithstanding the termination of [the] Agreement for any reason."[10]  Most pertinent to deciding Synergy's motion is the provision regarding the assignment of inventions.

---

[6]    *See id.* ¶¶ 5, 21.

[7]    *See* Services Agreement ("Agreement"), Ex. B to 5/4/11 Declaration in Opposition by David Jaroslawicz, counsel to Synergy ("Jaroslawicz Opp. Decl.").

[8]    *See* Agreement ¶ 3.

[9]    *See* 7/1/08 Letter from Bernard Denoyer to Per Lindell, Ex. C to Jaroslawicz Opp. Decl.

[10]    Agreement ¶ 6(e).

3

The Agreement states that

> all ideas, methods, inventions, discoveries, improvements,
> work products or developments, *whether patentable or
> unpatentable*, that relate to [CapeBio's] work with
> [Synergy], made or conceived by [CapeBio], solely or jointly
> with others, while providing consulting services to [Synergy]
> . . . shall belong exclusively to [Synergy] . . . *whether or not
> patent applications were filed thereon* . . . . [11]

Accordingly, CapeBio is required to assign all "such inventions and all such

patents that may issue thereon" to Synergy.[12]  These provisions apply to all

inventions produced within one year of termination or expiration of the

Agreement.[13]

C.    **The August 25, 2009 Action**

On August 25, 2009, Synergy filed a Complaint in New York State

Supreme Court against CapeBio and Lindell.[14]  The complaint alleged that Lindell

had, *inter alia*, breached the Agreement's confidentiality provision by using

---

[11]    *Id.* ¶ 11(a) (emphasis added).  The contract was between Synergy and
CapeBio, but the parties more or less agree that CapeBio is a shell company and
the contract was essentially a personal services agreement between Synergy and
Lindell.

[12]    *Id.* ¶ 11(b).

[13]    *See id.* ¶11(a).

[14]    *See* 8/25/09 Synergy Complaint Against CapeBio and Per Lindell, Ex.
D to Jaroslawicz Opp. Decl.

confidential information to develop a molecule for treating gastrointestinal disease[15] and violated the covenant not to compete.[16]  Pursuant to these allegations, Synergy sought both injunctive and monetary relief.[17]  Upon obtaining an affidavit from Lindell swearing that he had not violated the Agreement, Synergy voluntarily discontinued that action without prejudice.[18]

### D.    The Current Action

Four months after discontinuing the August 25, 2009 action, Synergy again filed a complaint in state court on December 22, 2009.  That complaint – which, in amended form, is the subject of this action – repeats Synergy's allegations from the prior action[19] and further asserts that Lindell formed a new entity, CombiMab, as a shell company and alter ego of Lindell.[20]  Synergy alleges that Lindell, through CapeBio and CombiMab, breached the Agreement by, *inter alia*, filing a patent or patents in competition with Synergy,[21] consulting or listing

---

[15]    *See id.* ¶ 25.

[16]    *See id.* ¶ 28.

[17]    *See id.* ¶¶ 31-55.

[18]    *See* Compl. ¶ 44.

[19]    *See generally id.*

[20]    *See id.* ¶ 48.

[21]    *See id.* ¶ 50.

as consultants on a business plan several scientists who had consulting contracts with Synergy,[22] making presentations to various venture capital firms regarding the development of uroguanylin analogs and analogs of ST Peptides,[23] and misappropriating Synergy's confidential information for its own benefit.[24] Synergy also asserts that Lindell committed perjury by executing the affidavit that caused Synergy to discontinue its prior action without prejudice.[25] Synergy seeks, among other relief, assignment of any patents that properly should be assigned to it under paragraph 11 of the Agreement.[26]

Defendants removed the action to federal court on the basis of diversity jurisdiction.[27] Over the course of the ensuing year, discovery was completed and a jury trial was scheduled to begin on April 23, 2011. On April 5, 2011, Synergy notified the Court that, in reviewing pretrial materials, it had become aware that there was no diversity of citizenship between the parties, as

---

[22]   *See id.* ¶ 49.

[23]   *See id.* ¶ 51.

[24]   *See id.* ¶¶ 56-57.

[25]   *See id.* ¶ 59.

[26]   *See id.* ¶ f [Prayer for Relief].

[27]   *See* Notice of Removal.

Synergy, CapeBio and CombiMab are all incorporated in Delaware.[28]  Synergy
alleges that the case was fraudulently removed to federal court through the
deliberate omission by defendants' previous counsel of the fact that Synergy is a
Delaware corporation, despite that fact appearing on the face of the Complaint.[29]
As a result, Synergy now seeks to have the action remanded to state court.

Defendants oppose remand.  While acknowledging that there is no
diversity, defendants argue, for the first time, that the Court has subject matter
jurisdiction over the case because it raises a substantial issue of patent law, over
which federal courts have exclusive jurisdiction.[30]  Additionally, defendants have
entered into a Stipulation amongst themselves that binds CapeBio and CombiMab
to whatever the outcome of the case may be.  They argue that this Stipulation
renders CapeBio and CombiMab dispensable parties and thus, ask this Court to
dismiss the corporate entities as parties over Synergy's objection.[31]

## III.   APPLICABLE LAW

---

[28]   *See* 4/5/11 Letter from Jaroslawicz to the Court, Ex. D to 4/12/11
Jaroslawicz Declaration ("Jaroslawicz Decl.") at 1.

[29]   *See id.*

[30]   *See generally* Defendants' Memorandum in Opposition to Plaintiff's
Motion to Remand ("Def. Opp.").

[31]   *See* Def. Mem. at 6.

7

## A.    Jurisdiction under Federal Patent Law

Under 28 U.S.C. section 1338(a), "[t]he district courts shall have

original jurisdiction of any civil action arising under any Act of Congress relating

to patents . . . ."  Jurisdiction under section 1338(a)

> extend[s] only to those cases in which a well-pleaded
> complaint establishes either that federal patent law creates
> the cause of action or that the plaintiff's right to relief
> necessarily depends on resolution of a substantial question
> of federal patent law, in that patent law is a necessary
> element of one of the well-pleaded claims.[32]

Thus, a case "arises under" federal patent law "where the vindication of a right

under state law necessarily turn[s] on some construction of federal [patent] law."[33]

The same test applies when construing section 1338 as when

construing section 1331, the general federal-question provision.[34]  The "well-

pleaded complaint" rule dictates that whether a case arises under federal law "must

be determined from what necessarily appears in the plaintiff's statement of his own

claim . . . unaided by anything alleged in anticipation [or] avoidance of defenses

---

[32]    *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 808-09 (1988).

[33]    *Franchise Tax Bd. of the State of Cal. v. Construction Laborers Vacation Trust for S. Cal.*, 463 U.S. 1, 9 (1983).

[34]    28 U.S.C. § 1331.  *See Christianson*, 486 U.S. at 808.

8

which it is thought the defendant may interpose."[35]  "[A] case may not be removed to federal court on the basis of a federal defense . . . even if the defense is anticipated in the plaintiff's complaint, and even if both parties admit that the defense is the only question truly at issue in the case."[36]  Furthermore, "a claim supported by alternative theories in the complaint may not form the basis for § 1338(a) jurisdiction unless patent law is essential to each one of those theories."[37]  On the other hand, "a plaintiff may not defeat § 1338(a) jurisdiction by omitting to plead necessary federal patent-law questions."[38]

### B.    Diversity Jurisdiction

Under section 1332(a), a federal district court has jurisdiction over "cases in which the citizenship of each plaintiff is diverse from the citizenship of each defendant."[39]  When a case over which a federal district court would have diversity jurisdiction is filed in state court, a defendant may remove the action to federal court, "provided that no defendant 'is a citizen of the State in which such

---

[35]    *Franchise Tax Bd.*, 463 U.S. at 10.

[36]    *Id.* at 14.

[37]    *Christianson*, 486 U.S. at 810.

[38]    *Id.* at 809 n.3.

[39]    *Caterpillar Inc. v. Lewis*, 519 U.S. 61, 68 (1996).

action is brought.'"[40] A plaintiff "objecting to removal 'on the basis of any defect in removal procedure' may, within 30 days, file a motion asking the district court to remand the case to state court."[41]  However, "[i]f *at any time* before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded."[42]

"In light of the congressional intent to restrict federal court jurisdiction, as well as the importance of preserving the independence of state governments, federal courts construe the removal statute narrowly, resolving any doubts against removability."[43]  When a party files a motion to remand, challenging the removal of an action from state court, "the party asserting federal jurisdiction bears the burden of establishing jurisdiction."[44]  If the removing party cannot demonstrate federal jurisdiction by competent proof, the removal was in

---

[40]    *Id.* (quoting 28 U.S.C. § 1441(b)).

[41]    *Id.* at 69 (citing 28 U.S.C. § 1447(c)).

[42]    *Id.* (citing 28 U.S.C. § 1447(c)) (emphasis added).

[43]    *Lupo v. Human Affairs Int'l, Inc.*, 28 F.3d 269, 274 (2d Cir. 1994) (quotation marks and citation omitted).

[44]    *Blockbuster, Inc. v. Galeno*, 472 F.3d 53, 57 (2d Cir. 2006) (citing *R.G. Barry Corp. v. Mushroom Makers, Inc.*, 612 F.2d 651, 655 (2d Cir. 1979)).

10

error and the district court must remand the case to the court in which it was filed.[45]

A court may drop a nondiverse party to preserve diversity jurisdiction,[46] as long as that party is not "indispensable" under Rule 19(b) and would not cause prejudice to any of the remaining parties.[47]  Rule 19(b) lays out four factors for consideration:

> (1) whether a judgment rendered in a person's absence might prejudice that person or parties to the action, (2) the extent to which any prejudice could be alleviated, (3) whether a judgment in the person's absence would be adequate, and (4) whether the plaintiff would have an adequate remedy if the court dismissed the suit.[48]

There is no "bright-line rule" that all parties to a contract are indispensable, given "Rule 19(b)'s flexible standard."[49]

## IV.   DISCUSSION

It is undisputed that, as the case currently stands, there is no diversity among the parties.  Synergy, CapeBio and CombiMab are all Delaware

---

[45]   *See, e.g., Kings Choice Neckwear, Inc. v. DHL Airways, Inc.*, No. 02 Civ. 9580, 2003 WL 22283814 (S.D.N.Y. Oct. 2, 2003).

[46]   *See* Fed. R. Civ. P. 21.

[47]   *See Call Ctr. Tech., Inc. v. Grand Adventures Tour & Travel Publ'g Corp. et al.*, 635 F.3d 48, 51 (2d Cir. 2011).

[48]   *CP Solutions PTE v. General Elec. Co.*, 553 F.3d 156, 159 (2d Cir. 2009) (per curiam) (citing Rule 19(b)).

[49]   *Id.*

corporations.  Thus, the suit was improperly removed to federal court.  Were this the extent of the argument, it would be clear that this Court lacks subject matter jurisdiction and I would have no choice but to remand the case to state court. However, defendants now argue that the Court has original jurisdiction over the case as "arising under" federal patent law.  Defendants further suggest, as an alternative or additional basis for jurisdiction, that diversity could be created by dismissing CapeBio and CombiMab as parties.  To that end, defendants have entered into a Stipulation under which CapeBio and CombiMab agree to be bound by the outcome of this suit.  Defendants argue that this Stipulation will prevent Synergy from experiencing any prejudice by their dismissal.

For the reasons stated below, I find that this suit does not "arise under" federal patent law.  Thus, the Court does not have federal question jurisdiction over this case.  However, I find that in view of defendants' Stipulation, the Court can dismiss the corporate entities in order to create diversity jurisdiction. As the parties have briefed the federal patent law issue, and in the interest of creating a full record, I begin by addressing the patent law argument, before explaining my reasons for granting defendants' Motion to Drop CapeBio and CombiMab.

### A.    The Suit Does Not "Arise Under" Federal Patent Law

Synergy states a variety of claims – including breach of fiduciary duty, breach of contract, and unfair competition – which are based on allegations that defendants have violated the 2007 Agreement signed between Synergy and CapeBio.  As part of the breach of fiduciary duty claim, Synergy alleges a breach of defendants' duties of good faith and loyalty by, *inter alia*, "filing patents which have been assigned to CombiMab and which should rightfully belong to plaintiff."[50]  As part of the breach of contract claim, Synergy alleges that "Lindell and CapeBio have breached, and continue to breach, the non-disclosure provisions of the Agreement by using and disclosing Synergy['s] confidential information and goodwill, without Synergy's consent, and the Assignment of Inventions provision."[51]  As part of the unfair competition claim, Synergy alleges that defendants "have used confidential information acquired from Synergy concerning the research and development of SP-304 and related uroguanylin analogs, as well as Synergy's proprietary ST peptide analogs."[52]

Synergy's claims are based, *in part*, on the theory that defendants have sought patent protection for compounds that Lindell must have been working

---

[50]  Compl. ¶ 75.

[51]  *Id.* ¶ 83.

[52]  *Id.* ¶ 88.

on while prohibited from doing so under the Agreement and/or by using Synergy's confidential information, which he was also prohibited from using under the Agreement.[53]   However, each claim also includes factual allegations unrelated to patents or patentability.  As relief, Synergy asks the Court, *inter alia*, to "[a]ward Synergy an assignment of all patents and other intellectual property rights CapeBio, Lindell, and CombiMab or any other entity under which Lindell may be doing business, currently hold relating to any Inventions, as that term is defined in paragraph 11 of the Agreement, obtained in breach of paragraph 11 of the Agreement."[54]   Synergy also seeks a variety of other forms of injunctive, declaratory, and monetary relief.

From these allegations, defendants have developed the theory that the instant action is in fact a federal patent law case, not simply a state contract law dispute.  Defendants read the above-described prayer for relief as seeking a court order "that Dr. Lindell assign four provisional patent applications, filed in the name of Dr. Henry Wolfe, to Synergy."[55]   Defendants then reason backward to conclude that "Synergy alleges that Dr. Lindell is the true inventor of the patent

---

[53]     *See id.* ¶¶ 51, 56, 57.

[54]     *Id.* ¶ f [Prayer for Relief].

[55]     Def. Opp. at 2.

14

applications: 'Lindell was researching and developing uroguanylin analogs and ST peptide derivatives and seeking patent protection for these inventions during the one-year restrictive period or prior thereto, in breach of CapeBio's and Lindell's obligations.'"[56] However, defendants have proven too much.

Synergy never specifies in the Complaint the particular patents of which it seeks assignment, much less specifically claims four patent applications in the name of Dr. Henry Wolfe.  Synergy simply claims "any patents and other intellectual property rights" to which it is entitled under Paragraph 11 of the Agreement.  This is a contract claim, which will require a fact-finder to construe the contract and decide the facts to determine whether or not Synergy is entitled to patents or other intellectual property rights relating to inventions that defendants developed, or helped to develop, in violation of their contractual obligations. Federal patent law did not create Synergy's claim, nor is it a necessary element of that claim.  At most, patent law arises in the context of defendants' defense – that Dr. Wolfe, not Dr. Lindell, was the true inventor of compounds for which defendants have sought patent or other intellectual property protection.  However, a patent-law-based defense does not give rise to federal subject matter jurisdiction.

Even more significantly, each of Synergy's claims rests on a *variety*

---

[56]     *Id.* (quoting Compl. ¶ 51).

of theories, including, but not limited to, theories that may turn on a question of federal patent law.  Although the Federal Circuit Court of Appeals has held, following the Supreme Court's decision in *Christianson v. Colt Industries Operating Corp.*,[57] that inventorship is one of the four areas of federal patent law "substantial enough to satisfy the jurisdictional test,"[58] it has also made clear that "a claim arises under the patent laws only if the inventorship issue is essential to the resolution of the claim."[59]  Significantly, the Supreme Court in *Christianson* distinguished between claims and theories, noting that "just because an element that is essential to a particular theory might be governed by federal patent law does not mean that the entire . . . claim 'arises under' patent law."[60]  In the instant case, while each claim relies to some degree upon theories of patent law, whether explicitly or implicitly, each claim also relies upon theories unrelated to patent law. As a result, patent law is not essential to the resolution of Synergy's claims, and so

---

[57]     486 U.S. 800.

[58]     *Hunter Douglas Inc. v. Harmonic Design, Inc.*, 153 F.3d 1318, 1330 (Fed. Cir. 1998), *overruled on separate grounds by Midwest Indus., Inc. v. Karavan Trailers, Inc.*, 175 F.3d 1356, 1359 (Fed. Cir. 1999).

[59]     *HIF BIO, Inc. v. Yung Shin Pharm. Indus. Co., Ltd.*, 600 F.3d 1347, 1354 (Fed. Cir. 2010).

[60]     *Christianson*, 486 U.S. at 811 (citing *Franchise Tax Bd.*, 463 U.S. at 26, and n.29).

those claims do not "arise under" federal patent law.

Additionally, the possibility that the fact-finder may be called upon to determine the true inventor of certain compounds does not turn such an inquiry into one that "arises under" federal patent law.  The contract at issue in the instant case closely resembles that in the Federal Circuit case *American Telephone & Telegraph Co. v. Integrated Network Corporation ("AT&T")*.[61]  In that case, the relevant contract provision assigned rights to "inventions . . . conceived" during the contractual period.[62]  The court noted that "conception of inventions . . . is [not] solely a technical question of patent law . . . . [T]here is no reason to assume [the contract] meant to cover only those [inventions] which are patentable."[63]  The court went on to note,

> when an invention was conceived may be more a question of

---

[61]   972 F.2d 1321 (Fed. Cir. 1992).

[62]   In view of the many similarities between the contract in the instant dispute and the contract in *AT&T*, I quote the latter at length: ". . . I hereby assign and agree to assign to said Corporation . . . all my rights to inventions which, during the period of my employment by said Corporation . . . I have made or conceived or may hereafter make or conceive, either solely or jointly with others, in the course of such employment or with the use of said Corporation's time, material or facilities, or relating to any subject matter with which said Corporation is or may be concerned; and I further agree . . . to execute, acknowledge and deliver all such further papers, including applications for patents, as may be necessary to obtain patents for said inventions . . . ."  *Id.* at 1322-23.

[63]   *Id.* at 1324.

17

> common sense than of patent law . . . In other words, the
> contract may have used conception in its generic, broadest
> sense.  We will not assume a bob-tailed meaning that could
> lead to derogation of the primary right of the state courts to
> decide what state law has to say about this contract.[64]

Notwithstanding defendants' claim that because the Agreement employed language

common to the patent context, *ergo* this must be a patent case,[65] *AT&T*

demonstrates that such language is not exclusive to patent law, nor does the use of

such language necessarily indicate that the claims arise under patent law.  Notably,

the Agreement between Synergy and CapeBio was even more explicit than the

*AT&T* contract in covering inventions "whether patentable or unpatentable" and

"whether or not patent applications were filed thereon."[66]

Furthermore, to the extent that defendants argue that this case will

require an adjudication of the true inventor of *pending* patent applications, this

Court does not have jurisdiction to render such a judgment.  The United States

Patent and Trademark Office has exclusive jurisdiction to decide or modify

inventorship on pending patent applications.  The district courts have jurisdiction

---

[64]    *Id.*

[65]    *See* Def. Opp. at 1, 4-6.

[66]    Agreement ¶ 11(a).  *See Nanomedicon, LLC v. The Research Found.
of the State Univ. of N.Y.*, No. 10 Civ 5094, 2011 WL 1791449 (E.D.N.Y. May 9,
2011) (finding removal improper where case involved state law claims and did not
"arise under" patent law).

only to resolve contested inventorship of *issued* patents.[67]

Finally, the only patent-related relief that Synergy seeks – assignment of any patents in dispute – is "available under the general law," and so does not "arise under" federal patent law.[68]  For all of the above reasons, I find that Synergy's claims do not "arise under" federal patent law, and thus, this Court does not have subject matter jurisdiction over the suit on that basis.

**B.      CapeBio and CombiMab Are Dispensable Parties and May Be Dismissed to Create Diversity Jurisdiction**

At present, this Court lacks subject matter jurisdiction over the instant matter because there is no diversity among the parties.  This case was removed from state court mistakenly, and quite probably by operation of fraud, through defendants' previous counsel's failure to plead that Synergy is a Delaware corporation, as are CapeBio and CombiMab.  Although I share Synergy's incredulity that this was an "honest mistake,"[69] I find it equally unlikely that Synergy's counsel did not realize the lack of diversity until April of this year, more

---

[67]     *See Eli Lilly & Co. v. Aradigm Corp.,* 376 F.3d 356 n.1 (Fed. Cir. 2004); *see also HIF BIO, Inc.*, 600 F.3d at 1354.

[68]     *AT&T,* 972 F.2d at 1324 (finding that relief sought – "title to patent and all documents related to the information wrongfully used by the employees" – did not give rise to jurisdiction under section 1338(a)).

[69]     Def. Opp. at 9.  *See* Plaintiff's Memorandum of Law in Reply ("Pl. Reply") at 2.

than a year after removal was effected. Defense counsel's omission concerned the citizenship of *Synergy*, information with which Synergy was very well acquainted. Thus, Synergy should have moved to remand the suit immediately, instead of waiting until the eve of trial. However, as the lack of diversity creates a jurisdictional defect, I must address the issue even at this late stage.

It is abundantly clear that Synergy is unwilling to seek dismissal of CapeBio and CombiMab, even with the protection of defendants' Stipulation that both CapeBio and CombiMab will be bound by any outcome of the case.[70] Thus, the only question to decide is whether the Court can, without Synergy's consent, dismiss CapeBio and CombiMab as dispensable parties, in order to create diversity jurisdiction, and, if it can do so, whether it should or must.

This case presents a sufficiently unusual set of facts that I have been hard-pressed to find any case in any jurisdiction squarely on point. The more usual situation is one in which plaintiff has fraudulently joined parties, omitted real parties in interest, or created assignments among parties in order to manufacture diversity jurisdiction so as to gain admission to federal court.

---

[70] The Stipulation "provides that CapeBio and CombiMab are jointly and severally liable with Dr. Lindell, and would be bound by any judgment, injunction, or order obtained by Synergy in this Court. It provides that the dropping of CapeBio and CombiMab will not be used as a defense, or as a ground to challenge the Court's judgment, or to exclude evidence at trial." Def. Mem. at 2 (citing Defendants' 4/13/11 Stipulation ("Def. Stip.")).

20

Notwithstanding the unusual circumstances, Synergy argues that defendants' Stipulation is precisely the sort of assignment or "reverse assignment" that section 1359 prohibits.[71]  The Supreme Court has stated that the congressional purpose behind section 1359 was to prevent "a vast quantity of ordinary contract and tort litigation [from being] channeled into the federal courts at the will of one of the parties."[72]  The Second Circuit has similarly noted, "we give careful scrutiny to assignments which might operate to manufacture diversity jurisdiction, the reasons for which we have made abundantly clear: 'such devices, unless controlled, can provide a simple means of expanding federal diversity jurisdiction far beyond [its] purpose.'"[73]  In view of that policy aim, the Second Circuit concluded, "we construe section 1359 broadly to bar any agreement whose 'primary aim' is to concoct federal diversity jurisdiction."[74]

Nonetheless, the majority of cases construing section 1359 are based

---

[71]   28 U.S.C. § 1359 states: "A district court shall not have jurisdiction of a civil action in which any party, by assignment or otherwise, has been improperly or collusively made or joined to invoke the jurisdiction of such court."

[72]   *Kramer v. Caribbean Mills, Inc.*, 394 U.S. 823, 828-29 (1969).

[73]   *Airlines Reporting Corp. v. S and N Travel, Inc.*, 58 F.3d 857, 862 (2d Cir. 1995) (quoting *Prudential Oil Corp. v. Phillips Petroleum Co.*, 546 F.2d 469, 474 (2d Cir. 1976)).

[74]   *Id.* (quoting *O'Brien v. AVCO Corp.*, 425 F.2d 1030, 1033 (2d Cir. 1969)) (emphasis added).

on assignment of rights among plaintiffs,[75] rather than assumption of liability

among defendants, and I am not aware of any cases dealing with so-called "reverse

assignment."  Indeed, the Ninth Circuit case, *Simpson v. Providence Washington*

*Insurance Group*,[76] while not controlling, provides persuasive reasons for

concluding that the section 1359 analysis suggested by plaintiff is inapposite.  In

*Simpson*, an Alaska citizen filed an age discrimination suit under state law against

an Alaska corporation in Alaska State court.  The parent corporation informed the

plaintiff that the parent, a Rhode Island corporation, was the plaintiff's true

employer.  The plaintiff then amended his complaint to name the parent

corporation as the defendant, at which point the suit was removed by defendant on

diversity grounds.

      When the jurisdictional question was raised, the district court held that

diversity jurisdiction was proper "based on a stipulation by the defendant that it

was the 'real party in interest' and, presumably, was capable of satisfying any

judgment rendered against it."[77]  The court held that, although "assignments of

---

[75]    *See, e.g., id.*; *Prudential Oil Corp.,* 546 F.2d 469; *Gilbert v. Wills*, 834 F.2d 935 (11th Cir. 1987).

[76]    608 F.2d 1171 (9th Cir. 1979).

[77]    *Id.* at 1173.  *But see id.* n.2 ("The real party in interest concept is correctly applied only to those persons prosecuting an action, not to a defendant. However, the district court here clearly intended the nomenclature to mean that the

[c]auses of action between parents and subsidiaries are presumptively ineffective to create diversity jurisdiction," the case before it was quite different.[78]  It was instead "a clearly diverse defendant's accepting full liability in a case in which a nondiverse party arguably has joint liability with it."[79]  The Ninth Circuit concluded in 1979, and I conclude today, that there appear to be "no cases suggesting that assignment of a cause of action between potential plaintiffs is equivalent to an assumption of liability by a defendant."[80]  Thus, I find that section 1359, even when broadly construed, does not preclude me from considering whether to dismiss CapeBio and CombiMab from the suit in order to create diversity jurisdiction, where Synergy has waited more than a year before objecting to removal on the eve of trial.

It is well-established that "a plaintiff ordinarily is free to decide who shall be parties to his lawsuit."[81]  However, "[i]f the district court determines that a party is nondiverse and dispensable, the court may sever the party and still preserve

_____

parent corporation was the proper party defendant to the action.") (citations omitted).

[78]     *Id.* at 1174.

[79]     *Id.*

[80]     *Id.*

[81]     *Id.*

23

its judgment over the claims of the remaining parties."[82]  "A district court's

decision to dismiss parties under Rule 21 is circumscribed only by the 'equity and

good conscience test' of Rule 19b."[83]  I now turn to an evaluation of whether

CapeBio and CombiMab are indispensable parties under Rule 19b, and whether I

may, in equity and good conscience, dismiss them from the suit.

CapeBio and CombiMab are shell corporations that each act as the

alter ego of Lindell.[84]  While the Agreement was formally contracted between

---

[82]   *United Republic Ins. Co. v. Chase Manhattan Bank*, 315 F.3d 168, 170 (2d Cir. 2003).  *Accord CP Solutions PTE*, 553 F.3d at 159.

[83]   *Universal Reinsurance Co., Ltd. v. St. Paul Fire and Marine Ins. Co.*, 312 F.3d 82, 87 (2d Cir. 2002).

[84]   Synergy alleged at an earlier point in this litigation, in the context of defendants' motion to dismiss Lindell and CombiMab for lack of personal jurisdiction, that both CapeBio and CombiMab are shell corporations and thus Lindell's alter egos, and that Lindell was the sole person who was to perform services for Synergy.  *See* Transcript of 6/14/10 Conference at 3:15-4:8.  Of course, Synergy is not alone in having taken an inconsistent position in the course of this litigation – defendants previously sought to portray themselves as independent parties, in moving to dismiss Lindell and CombiMab for lack of personal jurisdiction.  *See* Pl. Opp. at 6 (referring to Motion to Dismiss for Lack of Personal Jurisdiction [Docket No. 13]).  Defendants now argue that CapeBio and CombiMab are merely Lindell's alter egos, so that the Court can dismiss the corporations from the suit to create diversity jurisdiction, while Synergy argues that CapeBio and CombiMab are the "primary defendants" and indispensable, in order to defeat diversity jurisdiction.  *See* Def. Mem. at 2; Pl. Opp. at 12.  At the time that it decided defendants' Motion to Dismiss, the Court found that Synergy had sufficiently alleged that the corporate entities were mere shells.  Therefore, Synergy may not now assert the contrary.  *See Hoodho v. Holder*, 558 F.3d 184, 191 (2d Cir. 2009) ("Facts admitted by a party 'are judicial admissions that bind

24

Synergy and CapeBio, it is clear that Lindell was the true contracting party.  Under the Agreement, Lindell provided consultancy services to Synergy.  Lindell is the President and main shareholder of both CapeBio and CombiMab.  It is not clear to the Court at this point whether either CapeBio or CombiMab has any assets. However, the Stipulation entered into by defendants provides that all three shall be jointly and severally liable for any judgment issued by this Court, and that they will agree to be bound by any injunctive or equitable relief granted by the Court.[85] It is well-established that "one of several joint obligors is not typically an indispensable party to an action against the others."[86]  Thus, in view of defendants' Stipulation, Synergy will not be prejudiced by dismissal of the corporate defendants, with regard to recovery of any judgment.

Synergy argues that it will be prejudiced by being "compelled to try the case in a vacuum because no rational jury will be able to help but wonder why CapeBio and CombiMab are not part of the case when the agreement is between

---

th[at] [party] throughout th[e] litigation.'") (quoting *Gibbs ex rel. Estate of Gibbs v. CIGNA Corp.*, 440 F.3d 571, 578 (2d Cir. 2006)).

[85]     *See* Def. Stip. ¶¶ 1, 2.  The Stipulation has been signed by the three defendants, and establishes defendants' liabilities and limitations on defendants' rights.  Synergy is not a party to the Stipulation and is in no way bound by it.  The fact that the Stipulation is "unilateral" in this sense does not make it any less binding or effective.

[86]     *Universal Reinsurance Co., Ltd.,* 312 F.3d at 87.

Synergy and CapeBio and CombiMab is the name Lindell is using to compete with Synergy."[87]  However, the Stipulation provides that Lindell will not seek the exclusion of otherwise admissible evidence or argument, or assert any defense, on the grounds that either CapeBio or CombiMab were dismissed from the suit.[88] There is no reason that Synergy cannot construct the narrative that it wishes for the jury, even without the corporate entities as defendants.  Contrary to Synergy's assertion, a rational jury will understand that Lindell is the proper party defendant here, as his actions are at issue, whether he was acting through CapeBio, CombiMab, or in his individual capacity.  Synergy's concern can be further alleviated by an additional trial stipulation that the Agreement is to be construed as being between Synergy and Lindell, and appropriate jury instructions along those lines.  Thus, I find that the Stipulation already entered into by defendants, and the additional remedies that I have proposed, will more than alleviate any prejudice to Synergy.  Furthermore, defendants have agreed through the Stipulation that they will not be prejudiced by the dismissal of CapeBio and CombiMab.[89]  Therefore, the first 19(b) factor – prejudice to the absent person or parties to the action – does

---

[87]      Pl. Opp. at 14.

[88]      *See* Def. Stip. ¶¶ 7, 8.

[89]      *See* Def. Stip. ¶¶ 3, 5, 6.

26

not pose a concern for this Court, because "any prejudice could be alleviated," as contemplated by the second 19(b) factor, pursuant to the Stipulation.[90]

I also find that under the Stipulation, judgment in the absence of CapeBio and CombiMab will be adequate, in satisfaction of the third 19(b) factor. It will be adequate both in the sense of being "consistent with judicial economy, because the time and expense of resolving these issues in the district court . . . have already been spent," and adequate "in the sense implied by Rule 19(b)," in that plaintiff "will be able to recover complete relief" from defendants.[91]  It is true that Synergy would also have an adequate remedy if this Court dismissed the federal suit and remanded to state court, as contemplated by the fourth 19(b) factor; however, the other three 19(b) factors, as just discussed, suggest that the corporate entities are not indispensable parties to this suit.

I am well aware that the primary, indeed the *only* aim, of the Stipulation is to "concoct federal diversity jurisdiction."[92] I am likewise aware that this action was removed mistakenly, and quite probably through outright fraud, by defendants' prior counsel.  However, Synergy does not come to the current mess

---

[90]    Fed. R. Civ. P. 19(b).

[91]    *Universal Reinsurance Co., Ltd.,* 312 F.3d at 88.

[92]    *Airlines Reporting Corp.*, 58 F.3d at 862.

27

with clean hands either.  There is simply no conceivable way that Synergy did not realize the lack of diversity when removal was first effected, more than a year ago, since the removal notice included full citizenship information about defendants and omitted mention only of Synergy's Delaware incorporation – information well-known to Synergy's counsel.  It is abundantly clear that both parties are guilty of forum-shopping and judge-shopping.

I am not eager to retain in federal court a case that should never have been removed in the first place.  I am even less eager to reward the fraudulent behavior of prior defense counsel, but neither am I inclined to reward the belated objection of Synergy's counsel.  Thus, since neither party has a claim on fairness at this point, I base my decision on a pragmatic concern for judicial efficiency, which is one of the primary animating principles behind the jurisdictional rules.[93]  In view of the fact that discovery has been completed and the parties are ready for trial, and considering the Stipulation entered into by defendants, which renders the corporate entities dispensable parties, I hereby dismiss CombiMab and CapeBio as defendants.  I find that this Court now has subject matter jurisdiction over the suit on the basis of diversity of citizenship.

---

[93]   Of course, federalism is the other primary principle underlying the jurisdictional rules.  However, federal courts decide state law issues on a daily basis for a variety of reasons, so there is nothing out of the ordinary about the Court retaining jurisdiction, despite the state law issues raised in this case.

## V.      CONCLUSION

For the aforementioned reasons, Synergy's motion is denied and defendants' motion is granted.  The Clerk of the Court is directed to close these motions [Docket Nos. 87 and 91].  A conference is scheduled for June 17, 2011 at 3 p.m.


SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated:      New York, New York
            May 24, 2011

29

**-Appearances-**

**For Plaintiff:**

David Jaroslawicz, Esq.
Jaroslawicz & Jaros, LLC
225 Broadway, Suite 2410
New York, New York 10007


**For Defendants:**

Bradley Scott Corsello, Esq.
Garbarini Law Group P.C.
501 Fifth Avenue, Suite 1708
New York, New York 10017